The NACOOCHEE HYDRAULIC MINING COMPANY *vs.* Hon. CHARLES D. DAVIS, Judge of the Superior Courts of the Western Circuit.

1. Injunction was granted upon an *ex parte* application. Answer was filed, ten days notice was given, and a motion was made to dissolve the injunction. Upon the hearing, the injunction was dissolved: *Held*, that a bill of exceptions did not operate as a *supercedeas*, so as to keep the injunction of force. (R.)

2. If exceptions be taken to said judgment, they should be certified, allowed, and entered upon the record. But no writ of error, as to them, can be heard in this Court, until after the final disposition of the cause in the Court below. (R.)

*Supercedeas.  Mandamus Nisi,* to compel Certificate of Bill of Exceptions, etc.

The Nacoochee Hydraulic Mining Company filed a bill for injunction, etc., against one Dean, returnable to May Term, 1869, of said Court. It was sanctioned, injunction was issued and served. The defendant answered the bill, and at the trial term, the cause was continued by complainant. Then Dean moved to dissolve said injunction, upon the grounds hereinafter mentioned. At the hearing, affidavits were read in support of the bill, and of the answer, these affidavits being conflicting as to the facts connected with the case. The Chancellor ordered the injunction to be dissolved. Within thirty days from that order, complainant made out and delivered to the Chancellor, a bill of exceptions, averring the facts, and that the Court erred in dissolving the injunction, on the grounds set forth in his order, to-wit, that there was not equity in the bill; its allegations were too vague and uncertain, and based upon the *information* only of a pretended agent of said company, and not sufficiently verified; because the injunction was improvidently granted; because said pretended agent was not complainant's agent; because the equity of the bill, if any, was sworn off by the answer, and because the *laches* of complainant estopped it from claiming the land in dispute, even if it had any right to said land.

The Chancellor certified the bill of exceptions to be true, but would not order the Clerk to send up the record, etc., to this Court; but he ordered the bill of exceptions and his decision to be entered upon the minutes of the Court. This he did because the cause was still pending in said Court, and, therefore, in his opinion, the effort to review his said judgment here, was premature. Thereupon, complainants' solicitors prayed for a *mandamus nisi* from this Court, calling on said Chancellor to show cause why he should not order his Clerk to send up said record, etc., for review, as in cases of final judgment. (As the remarks made upon granting the rule *nisi* are of great practical importance, they are published with the opinion of the Court, pronounced at the hearing.)

M. K. PALMER, J. R. BROWN, DAVID IRWIN, for petitioners.

Judge RICE, D. A. WALKER, for the Chancellor.

BROWN, C. J., in granting the rule *nisi* remarked : In this case the Hydraulic Mining Company filed a bill in White Superior Court against J. R. Dean, Jr., the allegations in which are not necessary to be here stated. Upon an *ex parte* application made to the Hon., Charles D. Davis, Judge of the Superior Courts of said Circuit, he granted an injunction against Dean, the defendant. Some time after this *ex parte* order granting the injunction, the ten days' notice required by the statute was given, and a motion was made to dissolve the injunction. After having heard the parties for and against the motion, his Honor, the Judge, passed an order dissolving the injunction. Within thirty days from the hearing, the solicitors for the complainants tendered their bill of exceptions to the decision of the Judge dissolving the injunction, and prayed that it be certified and sent up to the next June Term of this Court. Judge Davis certified that the bill of exceptions was true, but refused to order the Clerk of the Court to certify and send up the record to this Court, but did order him to enter the same of record in the Superior Court, under section 4191 and 4194 of the Code, the Court

The Nacoochee Hydraulic Mining Company *vs.* Davis.

holding that the case was still pending in the Superior Court, and that the decision, had it been made as the complainant claimed it should have been, would not have been a final disposition of the case.

1. Upon this state of the facts the complainants' solicitors now appear in this Court, and pray that a *mandamus nisi* do issue, directed to Judge Davis, calling upon him to show cause why he should not direct the Clerk of the Superior Court of White county to certify and send up the record to the next term of this Court, and that in the meantime a *supersedeas* be ordered by this Court.

The question of practice presented by this case is an important one, and we prefer to hear counsel on both sides before any decision is made.   In the meantime we decline to grant any order superseding the judgment of the Court below dissolving the injunction.   As this Court is not a Court of original jurisdiction, and no judgment has been rendered in this case by this Court, we doubt our power to pass any such order if the case were such as, in our opinion, made it necessary or proper.

But we think there is nothing for the *supersedeas* to act upon in this case.   By section 4192 of the Code, it is enacted that "either party in any civil cause, and the defendant in any criminal proceeding, in the Superior Courts of this State, may except to any sentence, judgment or decision, or decree of such Court, or of the Judge thereof, in any matter *heard* at Chambers."   This section of the Code evidently contemplates a *hearing*, when both parties are before the Judge, before the decision can be brought up to this Court by bill of exceptions.

In the case of *Johnson vs. Stewart*, decided at this term, this Court ruled as follows:   "When an injunction is granted upon an *ex parte* application of the complainant in the bill, which *ex parte* order, so granted by the Judge in vacation, was excepted to by the defendant, and brought up to this Court without having made any motion before the Judge to revoke or dissolve the injunction, as provided in section 3151 of the Code:  *Held*, that the granting of the *ex parte*

order for the injunction was not such a judgment, decision, or decree of the Judge *heard* at Chambers as entitles the defendant to except to the same and bring it before this Court by writ of error, under section 4192 of the Code."

In *Powell vs. Parker et al.,* 38*th Georgia Reports,* 646, we held that when a Chancellor, on the bill being presented to him, ordered that the defendant show cause on a day mentioned why an injunction should not be granted, and that in the *meantime* the defendants be enjoined till the further order of the Court, and on the hearing, the Judge refused the injunction, that the temporary injunction expired of its own limitation when the injunction was refused at the *hearing,* and that no validity could be given to it pending the proceedings in this Court, by bond given by complainant, which was claimed to operate as a *supersedeas* of the judgment refusing the injunction.

We are satisfied that these decisions are correct, and that they establish the proper practice. We see daily the evidence of injustice and wrong done by the imprudent exercise of the power to grant injunctions *ex parte* in vacation. Much the better practice when an injunction is asked, is for the Chancellor to refuse to act upon it till both parties are notified and have a fair opportunity to appear before him and be heard. Any judgment, order or decree rendered by the Chancellor, on such *hearing,* is such a judgment, order or decree as may be brought by bill of exceptions to this Court. We admit that the Chancellor has the power, in the exercise of a sound discretion, to grant an injunction in vacation upon a mere *ex parte* application without a *hearing.* But this should be done only in extraordinary cases where irreparable injury is likely to result from the delay necessary to a hearing. Such *ex parte* orders are from their nature temporary, and expire whenever the parties come before the Judge, and there is a *hearing,* when no answer has been filed, and the *hearing* is upon the bill alone. If ten days' notice is given by the defendant, and a motion is made to dissolve the injunction, and upon the hearing, without an answer, the Chancellor orders it to be set aside or dissolved, the *ex parte*

The Nacoochee Hydraulic Mining Company *vs.* Davis.

order becomes *inoperative* from that date, and cannot be kept in force by a bill of exceptions, which is claimed to operate as a *supersedeas* of the judgment rendered at the *hearing*.

If a complainant wishes to obtain a judgment of the Court granting or refusing the injunction which he can bring up to this Court, he must notify the opposite party, and there must be a hearing before the Judge. When this has been done, any judgment rendered, or order granted, by the Judge, is the proper subject of a bill of exceptions. And if, on such hearing, the Judge grants an injunction, and the ten days' notice is afterwards given of a motion to dissolve it, which is done, that decision may also be brought up by bill of exceptions, and upon the giving of bond as provided in such cases, it operates as a *supersedeas* of the last judgment, and continues in force the first judgment granting the injunction, after notice to the defendant and a hearing of the case by the Chancellor.

Under a different rule irreparable injury may frequently be done under color of law. An unscrupulous complainant files his bill, and swears to a state of facts upon which he obtains, *ex parte*, an injunction, which, if continued, is ruinous to the interest of the defendant. So soon as the defendant is served with it, he gives the notice, and in ten days files his answer, and swears off the entire equity of the bill, and proves by a dozen witnesses that every charge in it is false. The Chancellor seeing the wrong which has been done, promptly orders the injunction to be dissolved. But the complainant files his bill of exceptions, and complies with the law, and thereby legally retains the injunction in force by superceding the judgment rendered at the hearing, for six or twelve months, till the case can be heard in this Court. The law was not intended to sustain any such practice, and a Court of Equity should never be used as the instrument for the perpetuation of such injustice.

We, therefore, refuse to grant an order superceding the judgment of Judge Davis, at the hearing in this case, and directing that the *ex parte* order granting an injunction without a hearing, be continued in force.

But we direct that the *mandamus nisi* be issued, requiring his Honor, Judge Davis, to show cause, by written statement, which he may send by mail to this Court, if more convenient to him, or otherwise, as he may think proper, at the heel of the Blue Ridge Circuit, why he should not direct the Clerk of the Superior Court of White county to certify and send up the record in such case to the next June Term of this Court. And it is further ordered, that the counsel for movant notify the counsel for the defendant in said bill of the time of hearing said motion in this Court, ten days previous thereto, that they may appear and show cause also, if they desire to do so, why said *mandamus* should not be made absolute.

McCay, J., concurred in the judgment, but not for the reasons given. He did not write out his reasons.

Brown, C. J. delivering the opinion at the hearing.

In this case the Nacoochee Hydraulic Mining Company filed a bill against J. R. Dean, to restrain an alleged trespass upon a gold mine, and applied to Hon. Charles D. Davis, Judge of the Superior Courts of the Western Circuit, for an injunction, which was granted *ex parte.* The answer was afterwards filed, and notice was given, as provided by the Code in such cases, and a motion was then made to dissolve the injunction, and after argument it was ordered by the Court that it be dissolved. Counsel for the complainant then tendered a bill of exceptions to the ruling of the Judge dissolving the injunction, which was allowed by the Judge, who ordered that it be entered of record in the case, under section 4191 of the Code, and refused to direct the Clerk of the Superior Court to certify and send up the record to the Supreme Court, on the ground that the cause was still pending in the Court below, and that the decision was interlocutory, and not final. Counsel for complainant then filed his petition in this Court, praying a *mandamus nisi* against Judge Davis, directing him to show cause why a peremptory *mandamus* should not issue, requiring him to direct the Clerk to send up

the record.   To the *mandamus nisi* Judge Davis replied, giving the reasons why, in his opinion, the case could not legally come up to, or be heard by, this Court, till the final hearing of the *cause* in the Court below, but expressing his readiness to order the record sent up without any compulsory order, if, in the opinion of the Supreme Court, it has jurisdiction of the case in the present stage of the proceedings.

This brings the question of the proper construction of section 4191 of the Code fairly before this Court, in solemn form, for adjudication.   The question has been incidentally presented on previous occasions, but it is now, for the first time, brought here from the refusal of the Judge to certify and send up the bill of exceptions, on the ground that the cause is still pending in the Court below.

We are not unmindful of the importance of the question, and we approach it with greater diffidence in view of the fact that the practice since the adoption of the Code, has been to hear such cases without objection.   Is that practice authorized by the laws of this State?   After very attentive consideration we are constrained to say it is not.   The section of the Code under consideration is in these words:   "*No cause shall* be carried to the Supreme Court upon *any bill of exceptions* so long as the same is *pending* in the Court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a *final disposition of the cause.*   But at any stage of the cause either party may file his exceptions to any *decision, sentence* or *decree* of the Superior Court, and if the same is certified and allowed, it shall be entered of *record* in the cause, and should the case at its *final determination* be carried by writ of error to the Supreme Court by either party, error may be assigned upon such bills of exceptions, and a reversal and new trial may be allowed thereon, when it is manifest that such erroneous decision of the Court has or may have affected the final result of the case."

This language is broad and comprehensive.   The Legislature has said in unequivocal terms, that *no cause shall* be carried to this Court by *any* bill of exceptions so long as it

is *pending* in the Court below. And to this rule there is but a single exception, which is, that the cause may be carried up before its *final termination*, where the decision or judgment complained of, if it had been rendered as claimed by plaintiff in error, would be a *final disposition of the cause.* Criticise it as we may, this is the imperative mandate of the Legislature, and whatever may have been the practice of the Courts, and the acquiescence of the profession, it is our duty, as a Court, when the question is fairly made and seriously urged, to meet it, and carry out the plainly expressed will of the law-making power in strict good faith. However much the construction we now place upon this section of the Code may conflict with the opinions of many members of the bar of this Court, we know it is sustained by some of the ablest lawers of this State, and we have the powerful support of the repeated decisions of the Supreme Court of the United States upon the very point in controversy, under a provision of the Judiciary Act, passed by Congress in 1789, which is identical in substance with the Act now under review, except that our statute permits the cause to be brought up before its *final termination*, provided the decision would have been *final* if it had been rendered as claimed by plaintiff in error. By the 22d section of the Judiciary Act of the United States, it is provided that *final judgments* and *decrees* in civil *actions*, and *suits in equity* in a Circuit Court, brought there by original process, or removed there from Courts of the several States, or removed there by appeal from a District Court, when the matter in dispute exceeds the sum or value of $2,000 00, exclusive of costs, may be re-examined and reversed or affirmed in the Supreme Court.

By section 25, it is also enacted that a *final judgment* or *decree* in *any suit* in the highest Court of law or equity of a State, in which a decision in the *suit* could be had, where is drawn in question the validity of a treaty, etc., etc., may be re-examined, and reversed or affirmed in the Supreme Court of the United States.

Our statute, with the exception above mentioned, expressly denies jurisdiction to this Court so long as the *cause* is

The Nacoochee Hydraulic Mining Company *vs.* Davis.

pending in the Court below. The United States statute confers jurisdiction on the Supreme Court in case of *final judgments* or *decrees* in civil *actions* or *suits* in equity in the Circuit Courts, and in *final judgments* or *decrees* in any *suit* in the highest Court of any State in the cases mentioned, and by implication denies jurisdiction in all other cases. The meaning is the same in both statutes. They authorized the Supreme Court of this State in the one case, and the Supreme Court of the United States in the other, to review the final judgment in the cause or suit when the case is no longer *pending* in the Court below. The statutes being substantially the same, it would seem to be safe for us to follow the decisions of the Supreme Court of the United States in putting a construction upon our own Act.

And we here respectfully invite attention to the following, among other rulings of that Court, upon this question: Young vs. Grundy, 6 Cranch, 51, was an appeal to the Supreme Court from an *interlocutory decree* of the Circuit Court of the District of Columbia, *dissolving an injunction*. Marshall, C. J., delivering the unanimous opinion of the Court, says: "But the Court has no doubt upon the question. No appeal or writ of error will lie to an *interlocutory decree* dissolving an injunction. Writ of error dismissed with costs."

The Judiciary Act of 1789 makes the same provision for carrying up a case from the District Court to the Circuit Court, when the sum exceeds $500 00, as is made for carrying the case from the Circuit Court to the Supreme Court when the amount exceeds $2,000 00, to-wit: that any *final* decrees and judgments in civil actions in the District Court may be carried up, etc.

In Patterson vs. The United States, 2 Wheaton, 221, it was ruled that: "A Circuit Court has no authority to issue a *certiorari*, or other compulsory process, to the District Court, for the removal of a cause from that jurisdiction before a *final judgment* or *decree* is pronounced. In such a case (says the Court) the District Court may and ought to *refuse obedience* to the process of the Circuit Court, and either party may move the Circuit Court for a *procedendo*, after the trans-

cript of the record is removed into that Court, or may pursue the cause in the District Court as if it had not been removed."

In Gibbons vs. Ogden, 6 Wheaton, 448, the Supreme Court held that: "A decree of the highest Court of Equity (of a State affirming the decretal order of an inferior Court of Equity) of the same State, refusing to dissolve an injunction granted on the filing of the bill, is not a *final decree* within the 25th section of the Judiciary Act of 1789, chapter 20, from which an appeal lies to this Court."

Again, in Brown vs. Swann, 9 Peters, 1, the Court held, Marshall, C. J., delivering the opinion, that: "An appeal to the Supreme Court does not lie from a decree of the Circuit Court, making an *injunction perpetual,* and leaving some matters of account open for further consideration, upon which the parties went on to take further proof. The decree perpetuating the injunction was not a *final decree.*"

The case of Smith vs. Trabue's heirs, 9 Peters, 4, is thus stated and decided by Chief Justice Marshall speaking for the whole Court: "The defendants in error filed the petition in the Circuit Court, stating that a declaration of ejectment had been brought by John Doe on the demise of Samuel Smith, and notice was served on Hiram and William Bryant, the tenants of the petitioners, and a judgment was rendered against them in May, 1818, on which no writ of *habere facias possessionem* has been issued. In November Term, 1818, a judgment was rendered against other tenants by virtue of which the marshal turned John Evans out of possession, who as tenant of the petitioners, resided on the place, which had been occupied by the Bryants. A rule to show cause was granted, and on its return restitution was awarded. The Judiciary Act authorizes this Court to issue writs of error to bring up any *final judgment* or decree in a *civil action* or *suit in equity,* depending in the Circuit Court, etc. This is not a *final judgment* in a civil action, nor a decree in a Court of Equity. It is no more than the action of a Court on its own process which is submitted to its on discretion. This Court takes no jurisdiction in such a case. It is not, we think,

given by the Judiciary Act. The writ of error is quashed, and the suit dismissed, the Court having no jurisdiction."

The case of Forgay vs. Conrad, 6 Howard, 201, was a motion to dismiss the appeal, (Taney, C. J., delivering the opinion,) in which it is held that a decree that money shall be paid into Court, or that property shall be delivered to a receiver, or that property held in trust shall be delivered to a new trustee, appointed by the Court, is *interlocutory only,* and intended to preserve the subject matter in dispute from waste or dilapidation, and to keep it within the control of the Court until the rights of the parties concerned can be *finally adjudicated.* From such a decree no appeal lies. The learned Judge adds: "In limiting the right of appeal to *final decrees,* it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit, and to have the whole case, and every matter in controversy in it decided in a *single appeal.*"

Barnard vs. Gibson, 7 Howard, 650, grew out of a violation of a patent right, where many thousands of dollars had been invested, and it was claimed that as the time allowed the purchaser to use the machine must soon expire, the loss would be irreparable by holding up the injunction. Upon which the Court ruled, that when a decree in Chancery refers the matter to a Master to ascertain the amount of damages, and in the meantime the bill is not dismissed, nor is there a decree for costs, the decree is not a final one, from which an appeal will lie to that Court, although there is a *perpetual injunction* granted. Mr. Justice McLane delivering the opinion says: "No point is better settled in this Court than that an appeal may be prosecuted only from a *final decree.* The cases are numerous where appeals have been dismissed because the decree of the Court was not final."

Thus, it will be seen, that the United States statute is the same substantially as our own, except as already pointed out, and that the rule is firmly established in the Supreme Court of the United States, that a decree *granting* or *refusing* an injunction, before the final hearing, is *interlocutory only* and not

final, and is not the subject of review in that Court. The same rule prevails in many of this States. But, if I could do so, without extending the opinion to too great a length, my time is so much occupied as to forbid a review here, of the decisions of the State Courts. The reader is referred to 1 Connecticut, 533; 1 Minnesota, 24; 2 Randolph, 247, etc. The words, final judgments and decrees, in civil *actions*, and *suits* in equity, are used in the Judiciary Act of 1789, above quoted. Our statute uses the word "cause." *No cause* shall be carried up, etc., upon any bill of exceptions so long as the same is *pending* in the Courts below. By reference to Bouvier's Law Dictionary, volume 1, page 227, it will be seen, that he defines the word cause, in practice, thus: "Cause is a contested question before a Court of justice, it is a *suit* or *action*." The very words used in the Act of 1789. Again, Bouvier, volume 2, page 553, defines *suit* as follows: "An action. The word suit in the 25th section of the Judiciary Act of 1789 applies to any proceeding in a Court of justice in which the plaintiff pursues in such Court the remedy which the law affords him."

It follows, therefore, that the cause is still *pending* till the remedy which the law affords is reached, or finally denied, and all issues or orders, springing out of the main cause of action, or ancillary to it, are collateral only, and judgments or decrees rendered upon them are not final judgments, and cannot be brought up to this Court, by *any bill* of exceptions, till the final disposition of the cause.

Bouvier says: "A *final* judgment is one which puts *an end to the suit*. An *interlocutory* judgment is one given in the course of a *cause* before final judgment." Blackstone, volume 3, page 398, says: "*Final* judgments are such as at once put an end to the *action*, by declaring that the plaintiff has either entitled himself, or has not, to recover the *remedy he sues for*." The same author, volume 3, page 396, says: "Interlocutory judgments, are such as are given in the middle of a *cause*, upon some plea, proceeding, or default, which is only intermediate, and does not *finally determine* or *complete the suit*." According to these standard common law authorities, and the

reported decisions of the Supreme Court of the United States, it is clearly obvious, that a decree, or order, granting or dissolving an injunction, which springs out of a suit or action pending, and is intended to operate only till the final hearing, is an interlocutory order only, and is not a final disposition of the cause.   And, as the action or cause is still pending in the Court below, and the right of the plaintiff, or complainant, to the remedy for which he sues, has not been *finally determined* in that Court, the statute says the cause shall not be brought to this Court *"upon any bill of exceptions."*

I need only add upon this point, that our Code settles the question that the granting or refusing to grant an injunction, pending the cause in Court, is not a final judgment, but only an interlocutory decree.   Section 3158 declares that: " A *perpetual injunction* can be granted only after a hearing and upon a *final decree."*   It follows then, when a cause has been commenced in equity and an injunction has been asked for, that there is no final disposition of that cause, or of that application for injunction, till after a hearing, and upon a final decree, the injunction is refused or made perpetual.   This and this only, in the vigorous language of the statute, is a final disposition of the cause, and then, and not till then, can the case be brought to this Court by *any* bill of exceptions.

It has been objected, that section 4191 of the Code uses the language, "any decision, sentence, or decree of the *Superior Court,"* and was therefore intended only to apply to causes pending on the common law side of the Court.   But we think this objection is fully met by reference to section 3025, when it is declared that: "All equity jurisdiction in this State is vested in the *Superior Courts* of the several counties."   The Superior Court has equity jurisdiction, but it is still the Superior Court.   And when we observe that the language of section 4191 is: "Any decision, sentence, or *decree* of the Superior Court," it is very obvious that causes in equity, as well as at law, were intended to be embraced.   We speak of a judgment, decision, or sentence, in a Court of Law, and a *decree* in a Court of Equity.

The most plausible objection which has been urged, how-

ever, against this view of the case is, that section 4192 autho-
rizes " either party in any civil cause, and the defendant in
any criminal proceeding in the Superior Courts of this State,"
to "except to any sentence, judgment, or decision, or decree
of such Court, or of the Judge thereof, in any matter heard
at Chambers." And section 4194 declares that " exceptions
tendered before the final hearing or judgment, for the mere
purpose of being made a part of the record, shall be certified
to be true by the Judge, and ordered to be placed on the re-
cord. Such exceptions must be tendered during the term."
Now it is said that section 4191 can not include a sentence,
judgment, decision, or decree, made by the Judge at Cham-
bers, because the exception can not in that case be tendered
during the term, as such decisions are often made in vaca-
tion, between the regular terms of the Superior Court. I am
free to admit that there is some difficulty in reconciling these
apparently conflicting sections of the Code. But they are in
*pari materia* and must all be construed together, and as this
is a remedial statute, intended to correct the evil which ex-
isted prior to the adoption of the Code, of carrying up inter-
locutory judgments and decrees, before the final hearing of
the cause upon its merits, we most give it a liberal construc-
tion, to suppress the mischief and advance the remedy. It
would seem, therefore, if the two sections cannot stand to-
gether, that the language "such exceptions must be tendered
during the term," in section 4194, should yield to the posi-
tive declaration in section 4191, that *no cause* shall be car-
ried to the Supreme Court, upon *any* bill of exceptions, so
long as the same is *pending* in the Court below, etc. But,
we think, this apparent conflict may be fairly reconciled,
when we take into the account the fact that the injunction is-
sues out of the Superior Court, exercising jurisdiction in
Chancery. In other words, out of a Court of Equity. And
the Code declares, section 4163, that a Court of Equity is al-
ways open.

Taking all these sections together, we think the meaning
is, that in all causes, whether at law or in equity, tried at the
Regular Term, all exceptions to the interlocutory orders,

judgments, or decrees of the Court, upon any collateral issue, or ony matter springing out of the cause, or ancillary to it, must be entered of record, to await the final trial of the cause, before they are brought to this Court.   And in all matters heard at Chambers, ·where the issue to be determined is collateral to, or springs out of a cause then pending in the Superior Court, and is ancillary to it, the bill of exceptions should be tendered at the session of the Court when the ruling is made, and the Judge should .allow a reasonable time before closing the session at Chambers, to make out the bill of exceptions, which, if true, he should sign, and he should order the Clerk of the Superior Court to enter it upon · the minutes, to be sent up with the record, if the cause is brought to this Court, for alleged errors on the final trial. But if the matter heard at Chambers is such a distinct proceeding, or cause of action, as may lawfully originate there, and is not a collateral issue, springing out of an action pending in the Court, or ancillary to such action pending, and the judgment, order, or decree, is final ; or if it would have been final, if rendered as claimed by the plaintiff in error, the bill of exceptions may be tendered at any time, within thirty days after the decision is made, and may be brought up to the next Term of this Court, as other final judgments may be.

It was urged in the argument that the construction we now place upon this statute, will work irreparable injury to suitors, as it will leave the granting and dissolving of injunctions, pending the cause, in the discretion of the Judges of the Superior Courts.   No such inconvenience in practice is felt in the United States Courts, or in the Courts of other States, where the same rule prevails. . The Circuit Judges, as a class, are lawyers of ability, and men of character, who seldom abuse that sound discretion which the law vests in them, when they are alone responsible.   The system under which we have practiced in this State, encourages indifference and neglect of duty, on the part of the Judges of the Superior Courts, as it is generally understood, where the amount involved is worth a litigation, that the case will be carried to

the Supreme Court, no matter which way it may be decided in the Court below. But if the responsibility rests upon the Judge alone, till the final trial, he will find it necessary to investigate the case more closely and act with greater caution.. With the numerous decisions already pronounced by this Court, upon the proper rules to govern in such cases, there will seldom be much difficulty in arriving at a just conclusion, when the Judge carefully considers the case submitted, in the light of the well known rules of law established by the Code and the reported cases.

Under the present practice, mischief just as irreparable may be done by the errors of the Judge of the Superior Courts, the only difference being, that it cannot last as long as it might do under the rule prescribed by the Code, as now construed. It is, however, simply a difference in degree, and not in principle. To illustrate, a suitor files his bill and prays relief, and a perpetual injunction, to restrain a trespass upon a gold mine, as was done in the case now under consideration, and he further prays that the defendant be enjoined, pending the litigation. If the Judge, under the present practice, refuses to grant the injunction, it may be twelve months, or more, before he can get that judgment reversed in this Court, if it is found to be erroneous. In the mean time the mine may have been exhausted and the mischief complete. Under the rule we now lay down, the result in such case would be precisely the same, with this difference, that he would be delayed till a trial in the Court below, upon the merits, and a judgment of this Court, if the case should be brought up. In other words, the difference would be in the length of the time only.

But it is said this construction amounts to a denial of the right to bring his case here, as the very object of the injunction is defeated by the delay, and the decision, when made in this Court, would be of no practical effect. This is not a good objection, as there is very seldom a case, where an injunction is asked, that the bill does not contain a prayer that it be made perpetual. As already shown, the Code says it can be made perpetual only after a hearing, and upon a final trial.

The Nacoochee Hydraulic Mining Company *vs.* Davis.

It is also urged that the Constitution makes this a Court for the correction of errors, and that it is the right of every suitor to have the errors that are committed to his injury, corrected here. This is true, but the Legislature has the power to prescribe the time and manner of correcting such errors in this Court. If that power should be denied to the Legislature, the Act withholding from the suitor the right to bring up a decision of the Superior Court, upon a motion for a continuance, or a motion to produce papers to be used on the trial, till the final hearing; would be as much a violation of the Constitution as the provision now under consideration. It is very evident, therefore, as the Code makes provision for bringing up *all* decisions which may be complained of as erroneous, within such time, and under such rule, as is practiced in the United States Courts, and the Courts of other States, there is no infringement of any Constitutional right of the suitor, to have the errors committed to his prejudice corrected.

But there is still another consideration which should not be overlooked. Under the old law and practice, when all sorts of interlocutory judgments, orders, and decrees, could be brought up for review by this Court, the Judge of the Superior Courts could not grant a second injunction, pending the suit, if the first had been dissolved. This rule no longer prevails. By section 3156 of the Code, it is enacted, that: "A second injunction may be granted, in the discretion of the Court." Under the rule now established, which forbids the bringing up an interlocutory decree, dissolving the injunction, this change is a necessary and proper one, as it gives the Judge of the Superior Courts the power to correct his own error in dissolving an injunction, at any time, when he is satisfied of its commission.

It is scarcely necessary for us to remark that it is the duty of the Judges of the Superior Courts to act with great care and caution, in granting or dissolving injunctions. In all proper cases, good and sufficient bond and security should be given by the party applying for the injunction, if not applied for in *forma pauperis*, before it is sanctioned, so as to protect

parties who may be injured by it.   And in case the Judge, at any stage of the proceeding, is satisfied he has erred in dissolving an injunction, he should at once correct the érror, by granting a second injunction.   As the law puts the responsibility upon him alone, till the final hearing, he should be careful to exercise a sound discretion, and see to it, that there is no abuse of that discretion, either in the use of, or the refusal to use, this restraining power of the Court, for the advancement of the ends of legal justice.

Sound public policy requires, that there shall be no unnecessary delay in the administration of the laws of the land. And we are well satisfied, that the rule, as we now construe the statute, will promote this important object.   Much unnecessary delay is caused by frequent appeals to this Court, pending the litigation of a cause in the Court below.

In the language of Chief Justice Taney, above quoted: "In limiting the right of appeal to final decrees, it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it, decided in a *single appeal.*"

Let the rule be discharged.

WARNER, J., concurred.   McCAY, J., dissented, but wrote out no opinion.