HOWARD *vs.* CHAMBERLIN, BOYNTON & COMPANY.

1. Exceptions *pendente lite* should be tendered, filed, ordered to be recorded, and recorded at the term when the rulings complained of were made. A failure to comply with any of these requirements during the term will prevent a consideration of the exceptions. This case is not governed by *Walsh vs. Colquitt, governor*, 62 *Ga.*, 384, where a party excepted prematurely, and where this court granted an order allowing the exceptions to be filed *pendente lite* after the term because they believed it to be consistent with justice and law, as provided by the Code, §4284.

2. Where suits were brought in a justice court each month, the ground of which was that plaintiff had been employed for a year at $50.00 per month, and had been discharged pending the term, interest necessarily accrued, and the plaintiff could not waive or remit interest so as to leave each amount even $50.00 and prevent appeals.

3. Suits between the same parties, arising under the same contract, involving the same pleas, and upon which the same verdict must be rendered, are properly consolidated.

4. Where a party to a cause makes himself a witness in his own behalf, he should be held to answer strictly and minutely every interrogatory of which he has knowledge, and if he neglects so to answer, or answers evasively, such testimony should be rejected.

5. In a suit by one as a discharged employé, the issue being whether or not he was discharged, statements made by him after the time when notice of discharge was alleged to have been given, and before the time when it was to take effect, were admissible to show preference by him of other service.

6. Howard sued Chamberlin, Boynton & Co. as a discharged employé; one plea was that he had accepted employment with Akers, and had not been injured. It appeared that plaintiff traveled for Akers and sold fruit trees, taking notes therefor; he was to get a commission on what was collected from these sales. Books containing notes were offered in evidence on the testimony of Akers that they had been received from plaintiff; also a book compiled from these notes by Akers and plaintiff containing a schedule of the makers and amounts with marks of payments where made:

*Held,* that they were admissible.

(*a.*) It being admitted that plaintiff was employed by defendants for a year, and that the employment terminated before the end of the year, the issue being whether the termination was by discharge or rescission, evidence was not admissible to show that plaintiff left a more lucrative position in order to obtain a year's employment with defendants.

7. There was no error in the charges or refusals to charge as shown by the record.

Practice in the Supreme Court. Practice in the Superior Court. Contracts. Interest. Waiver. Appeal. Evidence. Charge of Court. Before Judge HILLYER. Fulton Superior Court. September Term, 1879.

On May 2d, 1878, Howard brought two suits in the justice court 1026, D. G. M., against Chamberlin, Boynton & Co., each on open account. The first was as follows:

"ATLANTA, GA., May 1, 1878.

"Chamberlin, Boynton & Co. to Warren Howard, Dr.

"To amount due for the month of March, 1878, under contract of services as clerk for 1878, at $50.00 per month..............$50.00."

The other account was the same, except that it was for "the month of April, 1878." On the trial the justice rendered judgment for plaintiff in each case, and defendants entered appeals. Subsequently Howard brought eight other suits, being respectively for the months from May to December inclusive, one suit for each month. The accounts sued on were similar to the above, except the last two. The ninth suit (for November) was on the following account:

"ATLANTA, GA., January 20, 1879.

"Chamberlin, Boynton & Co. to Warren Howard, Dr.

"To amount due *to date* for the month of November, 1878, under contract of services as clerk at $50.00 for each month in 1878, $50.00."

The tenth account was as follows:

"ATLANTA, GA., February 25, 1879.

"Chamberlin, Boynton & Co. to Warren Howard, Dr.

"To amount due to date for services as clerk for the month of December, 1878........$50.00."

On each of these suits the justice rendered judgment for the plaintiff, and defendants appealed. The judgments in the suits for June and July, 1878, were for $50.00 even; the first judgment (for March) had an interlineation of interest, which the court held to be a nullity, thus leaving it also for $50.00. The remainder of the judgments included interest.

At the fall term, 1878, of Fulton superior court, five of these appeals (suits from March to July inclusive,) had been sent up. Plaintiff moved to dismiss them on two grounds:

(1.) Each of them on the ground that the amount claimed was not such as to render the case appealable.

(2.) To dismiss the appeals in cases for June and July because the appeal bonds given did not correspond with or describe the judgments in those cases.

The bonds described the judgments as being "in 1026th district, G. M., of Fulton county, Georgia, for $50.00, principal, and forty-five cents interest;" whereas the judgments for those months were each for $50.00 and costs. Counsel for defendants stated that the bonds were so drawn because he had understood from the magistrate that interest would be included, but plaintiff's counsel objected to interest, and it was not included.

The court overruled the motion to dismiss, and plaintiff excepted *pendente lite.*

At the September term, 1879, of the court all the appeals had been sent up, and were called for trial. Plaintiff's counsel

moved to dismiss each of the last five (being appeals of suits from August to December inclusive,) on the ground that the amount claimed was not such as to render the cases appealable. Counsel stated in his place that plaintiff did not claim interest, nor had he ever claimed it, but had always been willing to write off interest, and that these five judgments in the justice court only included it because in taking judgment in one of these cases the defendants' counsel claimed that interest was obliged to be inserted, and the justice ruled that such position was correct, although plaintiff's counsel objected; and that afterwards judgment by default was entered in each subsequent case, including interest, plaintiff's counsel consenting to avoid going through a trial in each case in the justice court, each involving like questions. Plaintiff's counsel offered to write off all interest, and disavow any claim thereto. The court held that the records showed that the amounts sued for were liquidated, and by law must bear interest, and that interest could not be waived or disclaimed. He thereupon overruled the motion.

The court then ordered the cases to be consolidated and tried together, over objection of plaintiff.

A set of interrogatories was sued out by plaintiff's counsel for him, and executed in November, 1878, before the close of the year involved in the suits. The court held them improperly taken, because the fourth cross-interrogatory was not fully answered. This interrogatory and answer were as follows:

"Fourth cross-interrogatory—Are you not now in the employment of Mr. Akers? Did you not make a contract with him in the month of February, 1878, to commence work with him on the 1st of March, 1878? If you did, what was that contract? State fully and particularly. If it was in writing, attach it or a copy of it to this answer. Have you done so? If it was not in writing state fully its terms. Where were you during the months of March, April, May, June, July, August, September and October, 1878?

What were you doing, and what did you receive for your work, or what are you to receive if you have not been paid for the months above mentioned? If you say that you received a commission, state what your commissions for each of the named months amount to? and if you say you have not received them, why not? State fully and particularly what your commissions amount to for March, April, May, June, July, August, September and October, 1878, whether you have collected them or not? If you state you worked for Mr. Akers on commission, state the amount of your sales for each of the above named months? What were you to receive out of said sales? What have you received of said amounts? What are you to receive? What amount is good and collectible? What amount is bad? State fully and particularly. What was the aggregate amount you received or will receive on account of service rendered to Mr. Akers from 1st of March to 1st of November, 1878? State fully."

"To the fourth cross-interrogatory he answers: I am. In the latter part of February, after having been notified of my discharge by defendants, Mr. Akers asked me if I would like to work for him. I told him I would, and asked him what he would give me. He said he would give me thirty per cent. of all the money I collected from the sale of fruit trees sold by myself, or would give me $50.00 per month, and allow me a sum for expenses, these expenses not to exceed ten dollars per month in money, and wherever I could pay my expenses by promising fruit trees in the fall, I could do so, and if less than ten dollars in cash was used I was entitled to only the actual amount used. All of this was dependent entirely upon my collections. The payment of $50.00 per month depended upon my collecting that amount from sales I had made. That agreement was reduced to writing on the 10th or 11th of February; it is not in my possession. I have given the language as near as I can remember it. I misplaced the contract, and don't know where it is. I have not decided which of these offers

I will accept, as both of them depend upon my collecting the different amounts. I was going through the country selling fruit trees; I was in Atlanta at different periods during that time; I remember specially in May and October. I cannot give the exact amount of sales for each of these months; but I was to receive nothing on sales, but I was to receive thirty per cent. of collections. I have not received a cent for any of these months; I am to receive thirty per cent. of what I collect if I see fit to do so. It is impossible to state what amount is good or what amount is bad; I cannot tell, for it depends entirely upon collections. I have not received one cent for these months from John W. Akers on account of collections."

On the trial it was admitted that Howard was employed by defendants for the year 1878, at $50.00 per month, and that one of defendants went to him about the last of January or first of February, told him that they would not need his services after the first of March, and requested him to get another place; and it was shown that some time in March plaintiff went to work for J. W. Akers, that he continued with him through the year, selling fruit trees, that the contract was that he should receive 30 per cent. on what was collected from sales made by him, that he realized some $460.00 therefrom, and that he was sick for some weeks during the summer. Defendants insisted (1.) That plaintiff was not discharged, but voluntarily agreed to a rescission of the contract. On this subject the evidence was in direct conflict. (2.) That he had made nearly, if not quite, as much working for Akers as if he had remained with them. (3.) That he had been sick a portion of the time and unable to work.

J. H. Wood was a witness for defendants. He testified that in the month of February, 1878, he had a conversation with plaintiff, in which the latter said he had gotten another place with Akers, hoped to make more, and he would not stay with defendants if they would increase his salary to $100.00 a month. On cross examination he testi-

fied that plaintiff stated that he had been notified that he would have to leave after March 1st, and witness and others were regretting that he was going to leave when the declaration was made, which is set out above. Plaintiff objected to the statement that he would not stay with defendants, etc., as being made after the discharge, and therefore irrelevant. The court admitted the evidence.

Testimony of Akers touching the amount made by plaintiff in his employment was objected to by plaintiff's counsel, because it appeared that his information was derived from letters, memoranda, etc.; it was admitted over objections, and plaintiff excepted; but the memoranda, etc., were subsequently accounted for, and the ground not relied on by counsel for plaintiff in argument.

Certain books were offered in evidence by defendants and objected to by plaintiff. It appeared from the evidence of Akers that after plaintiff went into his employment, the latter traveled through the country selling fruit trees for him. Plaintiff would take notes or written orders for the trees, payable on delivery in the fall. Three of the books offered Akers testified had been sent to him by plaintiff as containing these notes. The fourth was a tabulated statement of the other three, and of other like books sent by other agents. It was made by Akers, and plaintiff assisted him in the work; then compared it with the books from which it was made up, were satisfied of the correctness of it. It contained the names of purchasers of trees, and the amounts of their purchases; opposite each sale was the initial of the agent who made it; and opposite some of these was entered "pd" or "paid," indicating payment. Plaintiff objected to the three books of notes on the ground that no execution of them was proved; and to the fourth, because of irrelevancy, and because the entries were secondary evidence—especially so as to payments made. They were admitted.

The point being directly in controversy whether plaintiff agreed to give up his situation with defendants, or was dis-

charged, plaintiff's counsel offered to show by R. A. Hemphill that plaintiff had a situation with witness which paid him $60.00 per month, and which he gave up to accept a year's employment with defendants. The court rejected this. The court refused to give each of the following requests of plaintiff's counsel in charge:

(1.) " The *onus* is upon defendants to show a rescission of their contract with plaintiff." On the contrary he charged as follows: (After stating to the jury that it was admitted that plaintiff was employed for the year 1878 by defendants, and that the employment terminated before the end of the year by reason of something which passed between defendants and plaintiff, charged) " that the *onus* was upon the plaintiff to show by a preponderance of evidence that he was discharged."

(2.) "If plaintiff was employed by defendants for the year 1878, and before the year was finished they went to plaintiff and used to him such language as, from its natural and reasonable import, led him to believe that he was discharged, and therefore to leave their employment, such action on the part of defendants would amount to a discharge of plaintiff whether the word ' discharge' was used or not."

The court charged as follows: " If plaintiff was sick during 1878, the time he was sick would be taken into consideration and deducted by you in fixing the amount due by defendants, if any, unless the evidence showed that he would not have been sick had he remained in their employment; if this has been made to appear from the evidence, then you would not deduct anything on account of such sickness."

After verdict for defendants, plaintiff excepted and assigned error on each of the above rulings.

When the case was called in the supreme court, counsel for defendants in error moved to disregard the assignments based on the exceptions *pendente lite*, because the rulings complained of were made at the fall term, 1878, of Fulton

superior court, the exceptions *pendente lite* were tendered to the judge at that term, but were not filed in the clerk's office until April 1st, 1879, the second day of the next term. Counsel for plaintiff in error responded as follows : Exceptions *pendente lite* are part of record, and will be considered unless *filing* at first term is essential to validity under statute ; if so, no order of court can modify statute. But exceptions were allowed filed after term in *Walsh vs. Colquitt, governor*, 62 *Ga.*, 384.

The facts in regard to these exceptions appear from the record as follows : Exceptions *pendente lite* were tendered to the court. They recited the refusal of the court to dismiss appeals and holding interrogatories insufficient (at the fall term, 1878), set out in the first part of this report, and concluded thus : " And now during the term at which said rulings and decisions were made, comes plaintiff and tenders this his bill of exceptions *pendente lite*, and prays that it may be certified and ordered of record as by law provided."

Upon this the judge signed the following order :

"I certify, that the above bill of exceptions (with the qualification, etc.) tendered *pendente lite* is true, and contains all the evidence necessary to a clear understanding of the errors complained of, and it is ordered that the same be placed on record to wait the final termination of the case, as by statute provided. This January 10th, 1879.
                        (Signed)        GEO. HILLYER,
                                *Judge S. C. A. C.*"

Upon this was indorsed this entry :

"Filed in office this 1st day of April, 1879.
                        (Signed)        J. S. HOLLIDAY, C. S. C."

Nothing more appears concerning the exceptions, except that they are in the record, and are followed by the usual clerk's certificate.

In the record, in advance of the exceptions *pendente lite*, appears this order :

" WARREN HOWARD,   ⎫
        *vs.*             ⎬ Appeals.   Fulton Superior Court.
CHAMBERLIN, BOYNTON & Co. ⎭

" On motion of plaintiff's attorney to strike from the first three judgments in the justice court an interlineation of interest, on the

ground that the same was made after the judgments were rendered, it appearing that in the first judgment the interlineation was made by the justice after the entry of judgment, though later on the same day, and that the other interlineations were made at the time of entering judgment, it is ordered that the first be considered and deemed a nullity, and as if no interlineation had been made. As to the others the motion is overruled. On motion of the plaintiff's attorney to dismiss each of the first five appeals, it is ordered that the same be overruled and refused.

"Spring Term, 1879.

(Signed)       GEO. HILLYER, Judge, etc."

"It appearing to the court that the order as above was taken at the last term of the court, but omitted to be entered on the minutes by accident, it is ordered to be entered *nunc pro tunc.*

"Fall Term, 1879.

(Signed)       GEO. HILLYER, Judge, etc."

It is to this order that the opinion refers when it speaks of the order for recording being at the third term :

JACKSON & LUMPKIN, for plaintiff in error, cited as follows: Tendering at term, not filing, essential to exceptions *pendente lite,* Code, §§4250, 4254; *Walsh vs. Colquitt,* governor 62 *Ga.,* 384; 40 *Ib.,* 309, 322–3, 581. Plaintiff fixes claim, and can waive interest, *Cherokee Lodge vs. White* (September term, 1879); *Dykes vs. Wolsey* (February term, 1879); 51 *Ga.,* 194; 46 *Ib.,* 41; 58 *Ib.,* 77 (1); *Giles,* ordinary, *vs. Johnson* (September term, 1879); 36 *Ga.,* 599. Interest, in such case, damages, and may be waived, 2 *Ga.,* 376; 1 *Ib.,* 469; 18 *Ib.,* 176; 1 *Ib.,* 40; 2 *Ib.* 18; Bac. Abr. "Damages," D., 1; 2 Tuck. Com., 160; 2 Saund. Pl. and Ev., 250; 3 Bing., 353, 358; 9 Price, 134; 2 Salk., 623; 61 *Ga.,* 623. Contrast 58 *Ga.,* 406. Interrogatories sufficient, 41 *Ga.,* 117; 26 *Ib.,* 332; 45 *Ib.,* 416. Rescission of contract, Code, §§2859, 2860, 2758; 42 *Ga.;* 283. Misleading by language, Code, §2756. *Onus* as to sickness, 61 *Ga.,* 482 (1).

T. P. WESTMORELAND, for defendants, cited as follows: Filing at term essential to exceptions, Code, §§4250, 4254; 40 *Ga.,* 422, 423; *Trustees Masonic Hall vs. Merchants',*

*etc., Bank* (February term, 1879). The amount to be paid was fixed, interest must be added, and could not be waived, Code, §§3570, 2056 ; 56 *Ga.*, 350 ; 61 *Ib.*, 482 ; Decision February term, 1879, pam., p. 27 ; 46 *Ga.*, 41 ; 2 *Ib.*, 312. Cannot remit to give or deny jurisdiction, Code, §3760 ; 56 *Ga.*, 494 ; R. M. Charlton, 298 ; 58 *Ga.*, 77, 406. Appealable irrespective of judgments, Code, §4157. Consolidation right, 45 *Ga.*, 124.

CRAWFORD, Justice.

1. The first question made before us in this case is whether a bill of exceptions *pendente lite* can be considered here, when the same was neither filed nor entered of record at the term of the court at which the exceptions were taken.

Section 4250 of the Code provides that at any stage of the cause either party may file his exceptions, and if certified and allowed, they shall be entered of record.

Section 4254 further provides that the judge shall certify them to be true, and order them to be placed on the record, and that they shall be tendered during the term. Thus it will be seen that the first of these sections simply gives *the right*, and prescribes the *manner* in which it is to be exercised ; the second declares *the time when* they are to be tendered, and that is during the term. In this case the record shows that the judge certified the exceptions at the September term, 1878, but that they were not filed until the spring term, 1879, and further, that they were not ordered to be recorded until the fall term of the court for the year 1879, thus carrying them over to the third term after they had been made.

We think that the proper construction of these sections of the Code is, that exceptions *pendente lite* should be tendered during the term, certified to be true by the judge, filed by the party, ordered to and entered of record at that term, and there await the final trial, and if brought to this court for alleged errors, then to be sent up and heard.

And this we understand to be the ruling of this court in the case of *The Nacoochee Hydraulic Mining Company vs. Davis*, 40 *Ga.*, 322, 323. Nor is it at all inconsistent with that of *Walsh vs. Colquitt, governor*, decided at the February term, 1879, where the writ of error was dismissed because prematurely brought, with leave to the defendant to file the same bill of exceptions *pendente lite* to be heard as provided by law in such cases. The real question considered by the court in that case being, whether he was not premature with his exceptions, and not one where the party had failed to avail himself of a remedy which he sought to follow. But in that case the court, under section 4284 of the Code, gave that order and direction therein, because they believed it to be consistent with justice and law, as provided by said section.

2. The other questions made by the record in this case, arise upon the trial had between the parties at the September term, 1879, of ten cases which had been appealed from a justice to the superior court of Fulton county. Five of those cases were returned to the September term, 1878, and it was as to those cases that the bill of exceptions *pendente lite* related, and which we cannot consider here for the reasons above given. The whole number coming on to be heard, plaintiff's counsel moved to dismiss each of the last five, upon the ground that the amount claimed being but $50.00 and the interest, which he disclaimed, they were not such cases as to render them appealable. The court overruled the motion to dismiss, and the plaintiff excepted.

The suits were founded upon a contract made by Howard with Chamberlin, Boynton & Co. to clerk for them during the year 1878, at $50.00 a month. He only remained with them January and February, and in March went into the employ of J. W. Akers. The contract was not disputed either as to the time or the amount to be paid; it was for $50.00 a month and for twelve months. Suits were brought after the expiration of each month, and for the contract sum of $50.00 as the amount due. The only

question in issue seems to have been whether Howard was discharged, or consented upon request to find other and new employment, judgment was given in each suit by the justice for the plaintiff in the sum of $50.00 ; on the question of interest the parties disagreed, the plaintiff disclaiming any, defendant denying his right to disclaim. The magistrate decided that under the contract interest was due and rendered his judgment accordingly.

The question therefore made to dismiss the appeals depended upon the right of the plaintiff to remit the interest, thereby making the sum claimed only $50.00, and thus enabling him to defeat the defendants' right to an appeal.

All demands where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party becomes liable and bound to pay them. Code, §2056. This being a demand where by agreement the sum to be paid was fixed and certain, bore interest ; and it was as much a part of the claim as the principal, and could no more be stricken therefrom to defeat a right of the other party than the principal itself could be lessened to accomplish the same object. Had the suit been for damages for a breach of the contract that would have been a different case ; but the suits were on the special contract, and the interest was attached to and inseparably connected therewith. The plaintiff came into court electing to ask its enforcement, and he could not escape its legitimate consequences. 22 *Ga.*, 312 ; 58 *Ib.*, 406.

3. Another ground of exception to the ruling of the court was the order consolidating these separate suits. All the cases being between the same parties, arising under the same contract, involving the same pleas, and upon which the same verdict must be rendered, were properly consolidated.

4. The court on objection suppressed a set of interrogatories sued out by the plaintiff for himself, upon the ground that one of the cross-interrogatories had not been fully answered. An examination of the questions and answers thereto shows the objection well taken. The inter-

rogatory contained a series of questions, but they were upon the same subject matter, and though put in different forms sought the same information, and that which was necessarily within the knowledge of the party, and should have been fully answered.

Where the party to a cause makes himself a witness in his own behalf, he should be held to answer strictly and minutely every interrogatory put to him of which he has knowledge; and if he neglects so to answer, or answers evasively, such testimony should be rejected.

5. Exception was taken to the admission of Howard's declarations to the witness Wood, wherein he said that he would not stay with defendants if they would give him $100.00 a month. It having been made in February before he left their employ, it was certainly very proper testimony to show that he preferred service to others rather than to defendants, and that he was not forced to leave them.

6. The exceptions made to the admission of the evidence of Akers, and the books mentioned, as also to the rejection of the testimony of Hemphill, we think are not well taken, and that the court committed no error in the rulings therein complained of.

7. In view of the evidence as far as the same appears in the record, the charge of the court and his refusal to charge show no error, and the case must therefore be affirmed.

Judgment affirmed.