**ALUMINUM INDUSTRIES, Inc v EGAN**

Ohio Appeals, 1st Dist, Hamilton Co

No 5491. Decided Dec 12, 1938

Ragland, Dixon & Murphy, Cincinnati, for appellee.

J. D. DeFossett, Cincinnati, for appellant.

## OPINION

By ROSS, PJ.

Motion has been made to dismiss the appeal for failure to comply with the rule of the court providing the time for filing briefs.

In view of the real question presented by the appellant, we consider that the motion should be overruled.

The case proceeded to trial upon the cross-petition of the defendant, who sought damages from the plaintiff based upon a breach of a contract of employment. The defendant testified in his own behalf. The plaintiff on cross-examination, inquired of the defendant what employment he had sought or found after leaving the plaintiff. Defendant refused to answer. The record is as follows:

Q. I am just asking you a simple question, where did you go to work after you left Aluminum Industries?

A. And in that you are trying to make it appear that I would go out looking for a job, which is preposterous on the face of it.

Q. If you don't have to look for a job you are very fortunate; I know I always had to look for a job. Where did you go to work?

A. I continued in the same employment that I had been in practically all my life.

Q. What was that?

A. Serving clients.

Q. What clients did you serve after you left Aluminum Industries?

A. I protest.

MR. GARVER: I object.

THE COURT: You went into this on redirect examination, Mr. Garver, and Judge Dixon objected to my allowing this evidence to go in. I let it in over his objection, and since I have let it go in before I will let him ask this question now.

MR. GARVER: Should it not be limited up to the time of this loss of employment?

THE COURT: No. If a man says he is a professional engineer and evidence is adduced bearing on the question of damages, I take it you can find out what his professional earnings have been this year and last year and four or five years ago. The objection is overruled.

MR. GARVER: Exception.

A. May it please the court, on the last question Judge Dixon asked me I answer the question that I was serving clients. I may not be exactly correct, but the last question Judge Dixon asked was who were those clients. In the ethics of the profession I am not permitted to answer that question.

THE COURT: You are not permitted to tell who your clients are?

A. Absolutely not, any more than a doctor.

JUDGE DIXON: We have a right to check up on this testimony to find out whether or not it is true.

THE COURT: I would think so. I don't know anything about such a rule of ethics.

Q. You left Aluminum Industries on January 1, 1936; where did you go to work, for whom did you work after that, Mr. Egan?

A. I continued my work as a professional engineer serving clients.

Q. Who were the clients, let us have their names?

MR. GARVER: I object.

THE COURT: I think he is entitled to know that.

MR. GARVER: I don't think so, after the time of his discharge.

JUDGE DIXON: He said he would earn $30.00 a day, I want to find out about that.

MR. GARVER: The question was for the last ten years and up to the time of doing this work for Aluminum Industries. This is something that does not reffect on that at all.

THE COURT: His earning capacity isn't going to stop in a day. The objection is overruled.

MR. GARVER: Exception.

A. Here is the case for the court, and I am making this statement—

JUDGE DIXON: I object to this witness making any statement. He is supposed to answer questions.

THE COURT: I know of no rule of ethics that would preclude him from answering the question. There is no reason why a physician can't tell who his patients are, or why a lawyer can't tell who his clients are. You can answer the question or not; he is entitled to an answer.

A. I refuse to answer the question.

JUDGE DIXON: Then I move all the testimony about earning capacity be stricken from the record.

THE COURT: All right, motion is granted and the jury will disregard all the testimony about earning capacity and damages that may flow from the loss thereof.

JUDGE DIXON: That is all.

(And thereupon the witness left the stand.)

* * *

MR. GARVER: If the court please, we have issued subpoenas to three persons. The return of the sheriff shows they were served and have all gone out of town. I want to say we in good faith did subpoena them,

one of them was kind enough to have his wife call and say he had gone out of town, but the return of the sheriff shows they were all three served personally.

THE COURT: You aren't asking for a continuance.

MR. GARVER: No. I want to reserve an exception to the court's ruling in ordering that testimony stricken out.

THE COURT: Certainly, you may have your exception, but my attitude about that is I know of no rule that permits a man to refuse to submit to cross examination about his earnings, but if he does so refuse, he cannot recover, he is not entitled to recover for loss of earnings.

MR. GARVER: We rest, if the court please.

JUDGE DIXON: We have a motion, Your Honor.

THE COURT: I will excuse the jury for a few minutes at this time, ladies and gentlemen.

(Thereupon the jury was excluded from the court room and the following proceedings were had).

JUDGE DIXON: Plaintiff moves the court to instruct the jury to return a verdict for the plaintiff on defendant's cross petition. Plaintiff moves the court to strike from the record all of the testimony of the defendant, Egan, because of the refusal of said defendant to submit to cross examination.

MR. GARVER: I want the record to show, if Your Honor please, that this motion that is now being made was made after counsel for plaintiff filed the motion for a directed verdict.

THE COURT: I don't think it makes any difference about that, but the record shows that now."

(Thereupon argument was had; the jury was excused at 12:10 P. M. until 2 P. M. of the same day.)

At first it seemed to us that the action of the court was not justified by the rules of trial procedure. However, upon mature consideration we are convinced that the court was fully justified in the course pursued, both upon principle and precedent.

We find no controlling Ohio authority directly applicable to the exact question. The Supreme Court has in many cases recognized power inherent in the trial judge to so regulate procedure that justice may be the result of the proceedings over which he presides.

Marshall, C. J., in **King & Co. v Horton, 116 Oh St 205**, at **211**, stated:

"The judge is not a mere sargeant at arms to preserve order in the court room. His chief function is to prevent injustice being done between the parties, and, as a corollary thereto, to see that justice is actually administered."

From the time the first pleading is filed until the final judgment is rendered, it is the duty of the judge to see that each party is made secure in his rights and that neither is permitted an undue or unfair advantage over the other. Further, a party having, either in the first instance or by cross petition, asserted a claim against another, it is the duty of the court to see that such claim is prosecuted with dispatch and a failure to so prosecute a claim may be considered by the court an abandonment of the tribunal as a forum for the adjudication of the matters advanced as a claim.

The force of this right and duty is developed in cases where a party refuses to amend a pleading after the same has been rendered ineffective by motion or demurrer sustained, or where in proceedings on review a party fails to move in his appeal within the time prescribed for appropriate action.

Wellman in his "Art of Cross-Examination" opens his introductory chapter with these words:

"The issue of a cause rarely depends upon a speech and is but seldom even affected by it. But there is never a cause contested, the result of which is not mainly dependent upon the skill with which the advocate conducts his cross-examination."

In Ohio Jurisprudence, we find a statement of like import, Vol. 42, pages 323, 324, 325:

"The term 'cross-examination' does not strictly import anything more than a leading and searching inquiry of the witness for further disclosure touching the particular matters detailed by him in his examination in chief, although it does not include examination into other facts touching the merits of the cause. Nevertheless, the cross-examination of a witness is one of the principal and most efficacious tests which the law has devised for the discovery of truth. Inasmuch as it has for its object the disclosure of not merely the extent and degree of accuracy of the witness's knowledge, as well as the means of his knowledge, but also, his motives, inclinations, powers of memory, and relative situation in respect of the parties and the subject-matter of the investigation, it becomes an important test of the credibility of the witness. The right of cross-examination is an important one. Indeed, the importance of the right of full cross-examination of an adverse witness can scarcely be over-estimated. As a test of the accuracy, truthfulness, and credibility of testimony, it is invaluable. Its purpose is to break down the testimony of witnesses favorable to the opposite side and to bring out facts and circumstances favorable to the examiner.

It is a universal rule that when a witness has been examined in chief, the cross-examination of a witness by the adverse party is a matter of right, there being a clear right in the opposing party to cross-examine the witness to elicit suppressed facts which weaken or qualify the case of the party examining in chief or support the case of the cross-examining party."

The importance of the right is greatly increased when it involves the cross-examination of the principal party, for it must be apparent that a jury will give a party's own statement the most careful consideration. An unequivocal statement of a party which his opponent is not permitted to attack by cross-examination is left a most dangerous menace to the success of one affected thereby. And it is not always that by cross-examination the opponent seeks to bring out falsehood. Humans are naturally inclined to state matters most favorably to themselves. A little questioning and the force of a statemnet made on direct examination loses much of its initial weight.

Upon refusal of a party to submit to cross-examination the court has several alternatives. Its choice of these must be governed by its conclusion upon which will more nearly secure justice to all concerned. Punishment for contempt will be of little avail to the opponent who is confronted with the unimpeached testimony of the party witness.

A continuance is an unjustifiable hardship to the innocent litigant.

Aside from this the recalcitrant party has flagrantly defied the court before whom he seeks justice. Shall he be permitted to do so and yet embarrass his opponent?

Our conclusion is that it is more than merely the privilege of the court to prevent this—it is his duty so to do. In this conclusion we are sustained by the authorities.

In 70 C. J., page 618, it is stated:

"Where a witness refuses to answer, or answers evasively, pertinent questions on cross-examination, his testimony on his direct examination should be stricken out, especially where the witness is a party testifying in his own behalf."

We have carefully examined the supporting authorities cited and find they sustain the statement in the text.

Clements v Benjamin, 12 Johns, (N. Y.) 299; Howard v Chamberlin, Boynton & Co., 64 Ga. 684; Heath v Waters, 40 Mich. 457; Cumberland R. Co. v Girdner, 192 SW 873, 174 Ky. 761; Rutherford v Holmes, 66 N. Y. 368; Beardsworth v Whitehead, 122 N. Y. S. 31, 137 App. Div. 306; Gallagher v Gallagher, 87 N. Y. S. 343, 92 App. Div. 138; Meyer v Lent, 16 Barb. (N. Y.) 538; Thomas v Dower, 297 P. 1094, 162 Wash. 54.

In addition, we cite United States v Keown, 19 Fed. Supp. 639.

In defense of the refusal to answer the question propounded, the defendant claims privilege. We are unable to see how a statement of the names of his clients could be considered privileged. He was not required to state the nature of the patents about which they sought advice.

It is our conclusion that the subject of the question which the defendant refused to answer was relevant and material to the issues presented by the pleadings and was not so privileged as to justify the categorical refusal of the party to answer.

The court was therefore fully justified in striking out his previous testimony upon the matter of earning capacity and damages. There being no evidence upon this necessary issue in favor of the defendant upon his cross-petition, there was no alternative for the court but to instruct a verdict, as was done.

It is to be noted from the record quoted that the defendant was not prevented from introducing other evidence, nor did he avail himself of any privilege of a continuance. Counsel for defendant stated that he did not ask for a continuance.

We conclude the rights of all parties were fully preserved by the court and that no error, prejudicial to the appellant intervened by reason of the action of the court or in its judgment.

The judgment is affirmed.

HAMILTON and MATTHEWS, JJ, concur.