JOURNAL ENTRY AND OPINION
Defendant-appellant Woodfin Farmer, Jr. ("appellant") appeals from his conviction for possession of crack cocaine, less than one gram, in violation of R.C. 2925.11.
Appellant assigns the following errors for review:
 I. WHETHER THE COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR ACQUITTAL AT THE CONCLUSION OF THE STATE'S CASE.
 II. WHETHER A GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. WHETHER THE TRIAL COURT ERRED IN ALLOWING PREJUDICIAL ARGUMENT "THIS IS SOMEONE WHO IS INVOLVED WITH CHILDREN IN A RECREATION DEPARTMENT . . .; AND IF YOU WANT TO EXONERATE THIS DEFENDANT AND SEND HIM BACK TO HIS JOB WITH THOSE KIDS IN THE RECREATION DEPARTMENT, PLEASE GO AHEAD."
 IV. WHETHER THE DEFENDANT WAS DENIED A FAIR TRIAL DUE TO THE TRIAL COURT'S FAILURE TO ALLOW CERTAIN CROSS-EXAMINATION OF THE ARRESTING OFFICERS.
 V. WHETHER THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN HE WAS IMPROPERLY CROSS-EXAMINED IN A DEMEANING AND HUMILIATING MANNER BY THE PROSECUTING ATTORNEY.
 VI. WHETHER THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT ENFORCING A SUBPOENA REQUIRING THE POLICE OFFICER TO PRODUCE CERTAIN RECORDS.
 VII. WHETHER ASSESSING THE DEFENDANT AN ADDITIONAL $10,000.00 FINE FOR COSTS OF PROSECUTOR, TRIAL AND APPEAL IS CONTRARY TO LAW.
Finding the last assignment of error to have merit, the judgment of the trial court is affirmed in part and reversed in part.
 I.
On May 20, 1997, appellant was issued an indictment for one count of possession of drugs in violation of R.C. 2925.11. Appellant entered a plea of not guilty and the case proceeded to trial. Cleveland Police Officer Chris Hamrick testified that on January 31, 1997, at 3:45 a.m., he and Officer Perkins were southbound on East 116th Street in Cleveland. As the officers approached the intersection of East 116th Street and Miles Avenue, they observed a Porsche sitting in the parking lot of the Marathon Service Station. The Porsche was parked off to the side, away from the gasoline pumps. A male was leaning into the open passenger window of the car with his head and arms inside the vehicle. The Marathon station is located in an area where drug activity occurs. Many drug transactions take place with the seller standing next to the buyer's car window. The officers decided to pull into the service station to investigate further.
The officers drove into the parking lot. The male standing next to the Porsche immediately pulled away from the automobile's window and began walking away from the car, dropping something from his right hand as he did so. Officer Hamrick exited his police vehicle and approached the male, identified later as Milton Loftus. As Officer Perkins escorted Loftus to the police car, Officer Hamrick went to the area where Loftus had dropped the object. Officer Hamrick retrieved a small plastic bag containing what appeared to be five rocks of crack cocaine. Three more rocks of the apparent crack cocaine were on the ground. Loftus then was arrested.
The officers approached the Porsche in which appellant was a passenger. Appellant and Keith Stokes, the driver, were asked to step out from the automobile. As appellant opened the car door to comply, Officer Hamrick noticed a small object sitting on the rise where the door shuts, between the door and the passenger's seat. The object appeared to be a small rock of crack cocaine. The object later was determined to be .08 grams of crack cocaine. No other contraband or evidence was seized from the vehicle, Stokes, or appellant.
Officer Hamrick testified that he believed a purchase of drugs had taken place because furtive hand movements were observed in the automobile as the officers approached the service station and pulled into the parking lot. Officer Hamrick did not observe any money being exchanged.
Officer Perkins verified the testimony of his partner. Officer Perkins also testified he saw hand movements from both Loftus and appellant which looked as if some type of hand-to-hand transaction was taking place. Officer Perkins could not see what was being exchanged between the two men. Officer Perkins also saw the rock of crack cocaine when appellant opened the passenger's door.
Appellant testified in his own defense. Appellant was fifty-four (54) years old at the time of trial and employed as a custodian at the Thurgood Marshall Recreation Center in Cleveland. Appellant testified that he was awake at 3:00 a.m. on January 31, 1997, getting ready to arrive at the recreation center at 6:00 a.m., when an acquaintance, Rosa Grimes, rang his doorbell. She was accompanied by Keith Stokes. Appellant had not met Stokes prior to this. Both appeared to have been "partying." Stokes and Grimes brought a couple of beers with them. After visiting for a short period of time, Stokes asked appellant for a cigarette. Appellant did not have any cigarettes so appellant and Stokes left in Stokes' car to drive to the Marathon station to buy a pack of cigarettes. Stokes went inside the service station to purchase the cigarettes. While he was doing this, Loftus walked over to the Porsche and asked appellant what kind of car it was. Appellant stated the windows of the car were shut at the time. Stokes returned with a pack of cigarettes and spoke to Loftus. The police pulled up and Loftus walked away from the car. After Loftus was arrested, the police officer asked appellant to step out of the automobile and requested identification. Appellant was immediately arrested.
Appellant denied having any crack cocaine on January 31, 1997. He admitted to being convicted for drug possession nearly ten years before but stated he had not used drugs since. Appellant testified that he was suspended from his position at the recreation center following his arrest but would be reinstated if acquitted.
The jury convicted appellant on the possession of drugs charge. The trial court sentenced appellant to a twelve-month prison term. The trial court ordered appellant to pay court costs, a fine of two thousand five hundred dollars ($2500.00), and an additional ten thousand dollars ($10,000.00) for the costs of the prosecutor, trial, and appeal.
 II.
Appellant's first assignment of error argues that the trial court erred in overruling appellant's Crim.R. 29 motion for acquittal. Appellant maintains that the evidence adduced at trial was insufficient to support a conviction for possession of drugs.
A trial court is required to grant a motion for acquittal made pursuant to Crim.R. 29 if the evidence is insufficient to support a conviction for the offense. State v. Pickett (1996), 108 Ohio App.3d 312,314. A trial court shall not grant a Crim.R. 29 motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra.
R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.01(K) defines possession as follows:
 "Possess" or "possession" means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
Possession may be actual or constructive. State v. McShan (1991),77 Ohio App.3d 781. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery (1976),46 Ohio St.2d 316, 332. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may constitute constructive possession. State v. Barr
(1993), 86 Ohio App.3d 227, 235; State v. Burston (May 5, 1994), Cuyahoga App. No. 65128, unreported.
Appellant emphasizes that the police officers testified that they did not see a purchase and argues that the cocaine could have been in the automobile before appellant entered. Appellant contends that proving possession requires more than the discovery of a small piece of rock cocaine in the automobile in which appellant was a passenger.
In State v. Bailey (Sept. 14, 1995), Cuyahoga App. No. 67333, unreported, the defendant was the passenger in a car. This court held that constructive possession existed where a rock of crack cocaine was found on the driver's seat because of the close proximity of the defendant to the cocaine. In the instant case, the crack cocaine was discovered in the area of the floor adjacent to the passenger side door. The rock of crack cocaine and defendant were in close proximity to each other with appellant able to exercise dominion and control over the contraband.
The police officers also observed hand movements between appellant and Loftus. These hand movements were an indication that a drug transaction was taking place. Furtive gestures can constitute some evidence of possession. State v. Thomas (May 18, 1995), Cuyahoga App. No. 67446, unreported.
Based upon the location of the rock of crack cocaine near appellant and the observation of hand gestures between appellant and Loftus, and the fact that the events took place at 3:45 p.m., the trial court did not err by overruling appellant's Crim.R. 29 motion for acquittal. The prosecution presented sufficient evidence proving that appellant constructively possessed the rock of crack cocaine.
Appellant's first assignment of error is overruled.
 III.
In his second assignment of error, appellant contends his conviction was against the weight of the evidence. Appellant disputes the credibility of the arresting officers by arguing that their testimony was not reliable or believable.
When reviewing a challenge to the weight of the evidence, the test is whether, after reviewing the entire record and probative evidence and the inferences reasonably drawn from the evidence, the court determines that the trier of fact clearly lost its way when resolving conflicts in the evidence and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,175. It is the trier of fact who is best able to weigh the evidence and pass on the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230. Only if reasonable minds could not fail to find reasonable doubt of a defendant's guilt will an appellate court reverse a conviction as being against the manifest weight of the evidence. State v. Thomas (1982), 70 Ohio St.2d 79
. An appellate court will review the evidence to determine if the greater amount of credible evidence offered at trial supports one side of the issue rather than the other. Statev. Thompkins (1997), 78 Ohio St.3d 380.
Appellant asserts that the testimony of Officers Hamrick and Perkins was unreliable. Appellant argues the crack cocaine could not have been in plain view when appellant exited the vehicle. Appellant states that Officer Hamrick's testimony at the suppression hearing differed from his trial testimony because Officer Hamrick stated the cocaine was on the floor of the car. The transcript from the suppression hearing is not a part of the record on appeal. Even so, at trial, Officer Hamrick testified that, to him, the floor included the area right next to the door frame where the rock of crack cocaine was discovered. Any statement Officer Hamrick may have made that the cocaine was discovered on the floor of the car was consistent with his trial testimony.
Appellant also contends that the officers could not have observed movement in the Porsche because there was not enough time for the officers to have seen anything while they were driving down East 116th Street. Appellant maintains that the officers only would have had a split second to see any movement based on the speed at which the officers were driving. Appellant attempted to establish this same defense at trial and the jury chose to reject the argument. During cross-examination, appellant continually responded that the police officers lied at the trial. In closing argument, defense counsel repeatedly stated the police officers lied and had an interest in obtaining a conviction. The officers testified that they did have time to observe movement in the automobile, including after they pulled into the parking lot of the service station. The jury did not lose its way by deciding to believe the testimony of the two police officers.
Lastly, appellant seeks to cast doubt upon the officers' credibility by arguing that both officers would not have been on the passenger's side of the Porsche when appellant exited the vehicle. Appellant cross-examined Officer Perkins on this point. Officer Perkins answered that there was no standard procedure as to which side of a vehicle the officers should be on in this sort of situation. The manner in which two officers would have more than one person exit a vehicle is within the officers' discretion and the police vary their techniques. The jury was free to accept the officer's explanation and consider it to be credible.
Appellant's conviction is supported by the weight of the evidence.
Appellant's second assignment of error lacks merit.
 IV.
Appellant's third and fifth assignments of error will be addressed together as both raise issues of prosecutorial misconduct. Appellant objects to the prosecutor's cross-examination regarding appellant's drug use.
A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266.
A trial court enjoys broad discretion in the admission and exclusion of evidence. That discretion will not be reversed on appeal absent a clear abuse of discretion and only if the defendant was materially prejudiced. State v. Withers (1975),44 Ohio St.2d 53, 55. Controlling the scope of cross-examination also lies within the trial court's discretion. State v. Slagle
(1992), 65 Ohio St.3d 597, 605. Cross-examination pertaining to prior misconduct is not unfairly prejudicial where it is clearly probative of truthfulness or untruthfulness. State v. Amburgey
(1987), 33 Ohio St.3d 115; State v. Williams (1981), 1 Ohio App.3d 156
. When any witness testifies, the credibility of the witness is put directly into issue. State v. Anderson (Aug. 29, 1990), Montgomery App. No. 11703, unreported.
Evid.R. 609 provides for cross-examination concerning a prior conviction. Appellant denied having cocaine in his possession on the night he was arrested. Appellant stated that he had not used drugs in nearly ten years since his arrest on drug charges shortly after his daughter's birth. The prosecutor could inquire as to appellant's conviction because the crime was committed less than ten years before appellant's trial on the current charge.
Appellant also objects to the questions following appellant's statement that he did not use narcotics because he had obligations and a job. Appellant then mentioned that the children at the recreation center loved him. The prosecutor asked if appellant "did crack" around the children at the recreation center. The prosecutor's question was a legitimate response to appellant's statements.
It was defense counsel who first sought to interject the issue of appellant's position with the Recreation Department into the proceedings. During cross-examination of the state's first witness, Officer Hamrick, appellant's attorney asked if the officer was aware appellant had been suspended from his employment subsequent to this incident. The trial court sustained the objection to the question. Defense counsel later proffered the line of questioning in which he wanted to establish that appellant would be terminated from his employment if convicted. The attorney wished to inquire whether the officer was influenced by someone from the Mayor's office or the Recreation Department regarding the officer's testimony in the instant case. The attorney stated that appellant's employer had a financial interest in the outcome of the case. Appellant repeatedly sought to interject this conspiracy theory into the proceedings in order to cast aspersions on the veracity of the officers.
On redirect, appellant testified as follows:
 Q. Yes. By way of clarification, could you tell us, you were asked about your financial situation, with respect to the outcome of this case. Could you clarify that for us?
 A. Well, the commissioner — when they taken me to the Fourth District jail, Mr. Stokes and I, the Commissioner of Parks and Recreation, he came to the jail and he suspended me there, and he told me that depending the outcome of this case, that they will reinstate me and give me my back pay if this case was resolved.
Q. Resolved? What does that mean?
A. If it was cleared up.
Q. If you were exonerated?
A. Exonerated, yes.
(Tr. 117).
The prosecutor then asked appellant the following questions:
 Q. Do you think that was fair what the city did as far as your job? Was that fair? Is the city treating you fairly?
A. Well, not really because —
 Q. Not really? You think that the city should employ people who are using crack on the street, buying crack; is that what you think?
A. I'm not using crack.
MR. OVIATT: Objection.
THE COURT: Overruled.
 A. What bothers me is that I never should have been suspended —
Q. It's no big deal using crack.
A. — until I was found guilty. That's what I'm hurt about.
 Q. It's no big deal using crack when you work with children in the Recreation Department?
A. The childrens love me and know me and they respect me there.
 Q. You don't worry about that because when your daughter was born you were out smoking crack yourself anyways?
A. No, no, I wasn't. I told you I had stopped.
Q. Oh, you stopped?
A. And I have three more kids since then.
(Tr. 117-118.) Again, some of the prosecutor's inquiries were in direct response to appellant's statements concerning his employment status. However, the prosecutor did dwell too much on appellant's use of crack cocaine. There was no evidence appellant ever used crack cocaine at his place of employment. The prosecutor should not have continued to question appellant on this point past appellant's initial denial of using drugs while at work. However, when viewed in light of the testimony of appellant, the facts of the case show that appellant received a fair trial.
Appellant also objects to certain statements made by the prosecutor in closing argument. The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984),14 Ohio St.3d 13, 14. A prosecutor is afforded wide latitude in closing arguments. State v. Jacks (1989), 63 Ohio App.3d 200,210. It is within the trial court's sound discretion to determine if a prosecutor has gone beyond the bounds permitted. State v.Benge (1996), 75 Ohio St.3d 136. A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. State v. Loza (1994), 71 Ohio St.3d 61, 78. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann (1993),93 Ohio App.3d 301, 312.
Appellant first objects to a remark made by the prosecutor that appellant is someone who is involved with children at the Recreation Department. The prosecutor's statement was in response to defense counsel's statement in closing argument that this was a victimless crime. Although better left unsaid, appellant was not prejudiced by the response to a defense argument. Obviously, the jury knew by then that appellant's work involved contact with children.
Appellant also points to the following statements made by the prosecutor:
 It all adds up to his possessing that cocaine and it is perfectly reasonable for you to infer that. And if you want to exonerate this gentleman, this defendant, and send him back to his job with those kids at the Recreation Department —
MR. OVIATT: Objection.
THE COURT: Overruled.
 MR. CORRIGAN: Please, go ahead. But I urge you, the evidence in this case does not support that type of disposition in this case. The evidence is clear.
(Tr. 134). Throughout trial, appellant made it clear that he would be reinstated to his position as custodian at the recreation center if acquitted. Therefore, the remark was a comment on the evidence admitted at trial. Still, a prosecutor is not to ask a jury to convict a defendant for any public policy reasons. The statement should not have been made during closing argument. However, the comment did not prejudice appellant because the jury knew that an acquittal would result in appellant regaining his job at the recreation center. Appellant repeatedly mentioned the status of his employment during trial, particularly during his own testimony.
A charge of prosecutorial misconduct must be placed against the context of what occurred during the entire trial. The police officers testified they viewed Loftus with his head and arms inside the passenger-side window of a vehicle parked to one side of a gas station at 3:45 a.m. Hand movements between Loftus and the passenger, appellant, were noted. This activity is consistent with a drug transaction. Loftus discarded a bag containing five rocks of cocaine while three more rocks fell to the ground from the bag. The police discovered a rock of cocaine, similar in size to the rocks of cocaine which were in the possession of Loftus, between the passenger door and the floor. The cocaine was located in the exact area where the officers observed the hand movements between Loftus and appellant take place. Based upon these facts, which were admitted at trial, the conduct of the prosecutor did not deprive appellant of a fair trial.
Appellant's third and fifth assignments of error are overruled.
 V.
In his fourth assignment of error, appellant argues the trial court's limitation of cross-examination resulted in appellant being denied a fair trial. Specifically, appellant objects to the trial court's ruling prohibiting cross-examination about Officer Hamrick's background. Appellant also refers to the trial court's refusal to permit questions of the police officers regarding their knowledge of whether appellant had been suspended from his employment as a result of his arrest.
The right of a criminal defendant to confront and cross-examine witnesses is secured by the Sixth Amendment to the United States Constitution. Pointer v. Texas (1965), 380 U.S. 400. Cases involving the Confrontation Clause generally fall into two categories (1) cases involving the admission of out-of-court statements, and (2) cases involving restrictions imposed by law or by the trial court on the scope of cross-examination. Delawarev. Fensterer (1985), 474 U.S. 15, 18. However, the Confrontation Clause does not guarantee a defendant the most effective means of cross-examination. A defendant is guaranteed "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 20. The right of cross-examination includes the right to impeach a witness's credibility. State v. Green
(1993), 66 Ohio St.3d 141, 147. Every defendant must be provided the opportunity to cross-examine the witnesses and provided an occasion for the jury to weigh the demeanor of the witnesses.State v. Talbert (1986), 33 Ohio App.3d 282, 285. One purpose of cross-examination is to disclose a witness's motives, inclinations, and relative situation in respect to the parties.Aluminum Industries, Inc. v. Egan (1938), 61 Ohio App. 111.
However, the Confrontation Clause does not prevent a trial court from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness.
Trial judges retain wide latitude insofar as
 the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.
Delaware v. Van Arsdall (1986), 475 U.S. 673, 679. The limitation of cross-examination lies within the sound discretion of the trial court. That discretion will not be disturbed upon appeal absent a clear showing of an abuse of discretion. State v. Acre
(1983), 6 Ohio St.3d 140, 145.
The first instance of limitation of cross-examination to which appellant objects occurred when defense counsel asked Officer Hamrick what he did between high school graduation and the time he became a police officer. The trial court correctly sustained the objection to the question. The information is irrelevant to the proceedings. See Evid.R. 401.
Later, defense counsel asked Officer Hamrick if he was aware that appellant had been suspended from his employment after his arrest on the drug possession charge. The trial court sustained the objection on the issue of relevance. As stated above, defense counsel proffered on the record the line of questioning which he attempted to pursue with Officer Hamrick. The trial court's ruling was correct. Appellant's conspiracy theory is without foundation and far-fetched, at best. The right to cross-examination does not include pursuing any wild line of questioning in a last gasp attempt to create reasonable doubt.
Appellant's fourth assignment of error is meritless.
 VI.
In his sixth assignment of error, appellant contends the trial court erred by not enforcing a subpoena the defense served upon Police Officer Hamrick. A copy of the subpoena dated June 19, 1998, is in the record. The subpoena directs Officer Hamrick to bring all records pursuant to the criminal charge against appellant, including the police inventory of the personal property of appellant and Keith Stokes. At trial, Officer Hamrick denied receiving the subpoena. He did not bring the requested materials to trial. Officer Hamrick testified he reviewed the reports and file prior to trial and that, according to Stokes' property slip, Stokes did not have a pack of cigarettes in his possession at the time of his arrest. Officer Hamrick stated it was possible Stokes left a pack of cigarettes in the car.
Appellant argues that the subpoena was issued in order to establish that Stokes had an unopened pack of cigarettes in his possession at the time of his arrest. Appellant contends that this information would have helped corroborate appellant's version of events.
A criminal defendant is guaranteed the right to compulsory process to procure the attendance of witnesses in his favor by the Sixth Amendment to the United States Constitution and Section10, Article I of the Ohio Constitution. State v. Denis (1997),117 Ohio App.3d 442. Crim.R. 17(C) provides that a subpoena may be used to command a person to produce documentary evidence.
Officer Hamrick denied receiving the defense subpoena. The record before this court does not indicate whether service was perfected or not. Even if Officer Hamrick was served with the subpoena, any error by the trial court in not enforcing the subpoena was harmless. An error will be deemed harmless if it did not affect the accused's substantial rights. A defendant is not guaranteed a trial free from all error but only those which are prejudicial. An error is not grounds for reversal unless there is a reasonable possibility that the unlawful testimony contributed to the conviction. Crim.R. 52(A); State v. Brown (1992), 65 Ohio St.3d 483.
If Stokes had purchased a pack of cigarettes, it does not necessarily follow that appellant and Stokes did not then also purchase or attempt to purchase crack cocaine. The decision to buy the drugs may have been made on the spur of the moment. Also, Officer Hamrick testified that there could have been a package of cigarettes in the automobile. The production of the property slip would not have exonerated appellant or significantly contributed, if at all, to his acquittal or conviction. Appellant was not prejudiced.
Appellant's sixth assignment of error is overruled.
 VII.
Appellant's seventh assignment of error challenges the trial court's entry ordering appellant to pay ten thousand dollars ($10,000.00) for the costs of the prosecutor, trial, and appeal. Appellant asserts that the trial court lacked a legal basis for assessing the costs.
R.C. 2947.23 provides:
 In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. If a jury has been sworn at the trial of a case, the fees of the jurors shall be included in the costs, which shall be paid to the public treasury from which the jurors were paid.
The statute does not mention the costs related to an appeal. Those costs will be assessed by the appellate court, if necessary. Therefore, the trial court erred by including any costs of an appeal in the order.
Although the trial court does have statutory authority to assess a convicted defendant the costs of the prosecution, the figure assessed against the defendant can not be arbitrary but must reflect the actual costs of the prosecution. The ten thousand dollar ($10,000.00) amount levied against appellant by the trial court provides no indication of how the trial court arrived at this figure or what costs are included in the assessment. Certain fees have been disallowed by other courts. InState v. Watkins (1994), 96 Ohio App.3d 195, the court held that a three hundred dollar ($300.00) charge for a pre-sentence report was not a proper expense chargeable under R.C. 2947.23. Only the costs related to the process of the trial could be assessed and not those costs incurred for probation. In State v. Burns (Mar. 15, 1999), Marion App. No. 9-98-21, unreported, the Third District Court of Appeals refused to allow the inclusion of the cost of the defendant's court-appointed attorney fees under R.C.2947.23.
Because it cannot be determined what costs were included in the ten thousand dollar ($10,000.00) figure assessed against appellant, the trial court's journal entry is vacated as to the ten thousand dollars ($10,000.00). The case is remanded to the trial court on this issue for a determination of the actual costs of the prosecution against appellant.
Appellant's seventh assignment of error is well-taken.
Judgment affirmed in part and reversed in part and remanded.
The judgment is affirmed in part, reversed in part and remanded for further proceedings consistent with this Journal Entry and Opinion.
It is ordered that appellee recover of appellant its costs herein taxed.
The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, ADM.J., CONCURS; ANNE L. KILBANE, J. DISSENTS.
 ____________________________ LEO M. SPELLACY, JUDGE.